1
Erika Angelos Heath (SBN 304683)
*eheath@consumerlawfirm.com*
**FRANCIS MAILMAN SOUMILAS, P.C.**
369 Pine St., Suite 410
San Francisco, CA 94104
Telephone: (628) 246-1352
Facsimile: (215) 940-8000

2

3

4

5
Kevin Laukaitis (*pro hac vice forthcoming*)
*klaukaitis@laukaitislaw.com*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Telephone: (215) 789-4462

6

7

8

9
*Counsel for Plaintiff Kristyn Thompson
and the Putative Classes*

10

11
**UNITED STATES DISTRICT COURT**

12
**NORTHERN DISTRICT OF CALIFORNIA**

13

14
KRISTYN THOMPSON, *individually and on behalf of all others similarly situated*,

Case No. 4:23-cv-3073

15

Plaintiff,

**CLASS ACTION COMPLAINT**

16

17
v.

**DEMAND FOR JURY TRIAL**

18
SANOFI-AVENTIS U.S. LLC,

19
Defendant.

20

21

22

23

24

25

26

27

28

Plaintiff Kristyn Thompson ("Plaintiff"), on behalf of herself and all others similarly situated, brings this Class Action Complaint against Defendant Sanofi-Aventis U.S. LLC ("Defendant" or "Sanofi"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## INTRODUCTION

1. Defendant, Sanofi, offers a variety of over-the-counter and prescription products, including transdermal patches, pain relief products, topical creams, ointments, lotions, gels, and other skincare products, including anti-itch products, like Cortizone-10.

2. Defendant's "Cortizone-10" line of 1% hydrocortisone topical creams, ointments, gels, lotions, liquids, and roll-on are all marketed as and contain the same uniform front-label representation of "Maximum Strength" (herein referred to as the "Products[1]").

3. Hydrocortisone is a steroid that works by "calming down your body's immune response to reduce pain, itching, and swelling (or, otherwise put, inflammation).[2]

4. Many people use hydrocortisone to treat health problems, particularly skin issues; it can treat eczema and contact dermatitis, prickly heat rash, bug bites and stings, psoriasis, and diaper rash.[3]

5. Products that contain corticosteroids (such as hydrocortisone) can contain anywhere from 0.01% to 3% hydrocortisone – according to Defendant. Indeed, Defendant notes that "the maximum strength available without a

---

[1] Regardless of the Products' form or size, all Products contain the same or substantially similar front-label "Maximum Strength" representation made by Defendant. And all Products contain the same strength (1%) of hydrocortisone. As shown below, because comparable products available in the market contain more than 1% hydrocortisone, all Defendant's Products are uniformly mislabeled as "Maximum Strength." Plaintiff reserves the right to amend or add to the definition of "Products" through facts revealed in future investigation or discovery.
[2] "Hydrocortisone." https://www.nhs.uk/medicines/hydrocortisone/ (last accessed June 16, 2023).
[3] *Id.*

prescription is 1% [hydrocortisone]."[4]

6.    However, even though other products in the marketplace contain higher concentrations of hydrocortisone, Defendant falsely labels its 1% hydrocortisone Products as "maximum strength," which is deceptive and misleading to reasonable consumers, including Plaintiff.

7.    When consumers purchase pain-relieving and discomfort-relieving products, the strength of the dose is an important purchasing consideration. Consumers willingly pay a premium for pain- and discomfort-relieving products with strong doses.

8.    Defendant takes advantage of this consumer preference for strong doses and/or maximum strength by prominently representing the "Maximum Strength" representation, where the one place that every consumer looks at when purchasing a product – the packaging and labels themselves. Right on the front of its Products' labels, Defendant touts that the Products are "Maximum Strength" hydrocortisone products.

9.    Consumers, including Plaintiff, lack the scientific knowledge necessary to determine whether the Products are "Maximum Strength" hydrocortisone products or to ascertain the true nature of the quality or strength of the Products. As such, reasonable consumers must and do rely on manufacturers, like Defendant, to be transparent and adequately disclose on the packaging all material information regarding the Products and their dose and strength.

10.    Moreover, despite knowing and acknowledging that higher-strength hydrocortisone products exist, Defendant makes no such admission on the Products' labels.

11.    Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that deceives and

---

[4] "Powered by Hydrocortisone." https://www.cortizone10.com/en-us/all-about-itch/powered-by-hydrocortisone (last accessed June 16, 2023).

harms consumers and the public, including Plaintiff.

12.   Accordingly, Plaintiff brings this suit on behalf of herself and similarly situated consumers who purchased Defendant's Products. Plaintiff and Class Members were damaged because they would not have purchased (or would not have paid a premium) for Defendant's Products had they known the true facts regarding the Products' "Maximum Strength" representations and omissions.

13.   For all the reasons set forth herein, including but not limited to Defendant's misrepresentations and omissions regarding its "Maximum Strength" claims, Plaintiff seeks relief in this action individually and as a class action on behalf of similarly situated purchasers of Defendant's Products under the Causes of Action listed herein.

## PARTIES

14.   Plaintiff Kristyn Thompson is a resident and citizen of California residing in Pleasanton, California. She purchased Defendant's Cortizone-10 Maximum Strength creme approximately 6-10 months ago at a Target retail store in Dublin, California. She paid approximately $9.99 for the Product.

15.   Defendant Sanofi is a Delaware corporation, with its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi markets, distributes, and sells the Cortizone-10 Products at issue in this case, which are manufactured by Chattem, Inc. Defendant Sanofi markets, distributes, and sells the aforementioned Products to consumers throughout the United States through drug stores, mass retailers, and online retailers.

16.   Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the fraudulent and deceptive conduct alleged herein.

**JURISDICTION AND VENUE**

17.   This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

18.   The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

19.   This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in California and purposely avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

20.   Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District through the promotion, sale, and marketing of the Products in this District. Venue is also proper because Plaintiff resides in this District.

**INTRADISTRICT ASSIGNMENT**

21.   This action arises in Alameda County in that a substantial part of the events which give rise to the claims asserted herein occurred in Alameda County. According to L.R. 3-2(c), all civil actions in Alameda County shall be assigned to the San Francisco Division or the Oakland Division.

## COMMON FACTUAL ALLEGATIONS

22.  Hydrocortisone is the active ingredient in Defendant's Products, and it forms the basis for Defendant's "Maximum Strength" misrepresentations on the Products' front labeling, uniform material omissions, and overall advertising and marketing campaign.

23.  Hydrocortisone is commonly used in products such as Defendant's Products to help with irritation, itchiness, discomfort, and occasional pains.

24.  At all relevant times, Defendant has marketed its Products consistently and uniformly nationwide. Defendant sells the Products in all 50 states in various brick-and-mortar and online retailers.

25.  Aware of the consumer preference for strong and/or maximum doses of hydrocortisone in pain- and discomfort-relieving products to alleviate their irritations, itchiness, and discomfort, Defendant specifically advertises its Products as "Maximum Strength" hydrocortisone products.

26.  Below is an image of the hydrocortisone anti-itch creme front label:



27.  Defendant writes the "Maximum Strength" misrepresentation in yellow lettering contrasted against the red background – directly in the front and

center of the Product's label, which instantly catches the eye of all reasonable consumers, including Plaintiff and Class Members.

28. Defendant's "Maximum Strength" mislabeling appears uniformly on the front labels of all Products regardless of product composition or size.

29. All Defendants' Products contain 1% hydrocortisone regardless of product composition or size.

30. Defendant, however, is well aware that its Products are not of a "maximum strength" or are maximum strength hydrocortisone products and deceives trusting reasonable consumers like Plaintiff to believe that they are purchasing such Products while omitting from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of hydrocortisone (i.e., up to 3%).

31. Indeed, Defendant's over-the-counter Products contain only 1% hydrocortisone while competing prescription hydrocortisone products contain can contain up to 3% hydrocortisone, by Defendant's own admission.[5]

32. So, consumers can obtain a stronger hydrocortisone product comparable to Defendant's Products in the marketplace.

33. As such, Defendant's Products are not "Maximum Strength" hydrocortisone products as advertised.

34. But rather than accurately advertise its Products through its labeling, Defendant preys on consumers' desire for maximum discomfort relief to drive substantial profits.

35. All reasonable consumers, including Plaintiff, read and relied on Defendant's "Maximum Strength" representations when purchasing the Products. Defendant's "Maximum Strength" representation was material to Plaintiff's and Class Members' decision to purchase the Products.

---

[5] *Supra,* n.3

36.   Defendant's marketing efforts are made to – and do, in fact – induce consumers to purchase the Products at a premium because consumers believe they are getting hydrocortisone products that are "Maximum Strength."

37.   However, as shown throughout this Complaint, Defendant's Products are not "Maximum Strength" hydrocortisone products. Defendant's representations and omissions are false and misleading.

38.   Defendant intended for Plaintiff and Class Members to be deceived or misled by its misrepresentations and omissions.

39.   Defendant's deceptive and misleading practices proximately caused harm to Plaintiff and the Class.

40.   Plaintiff and Class Members would not have purchased the Products or paid as much for them had they known the truth about the mislabeled and falsely advertised Products.

### PLAINTIFF'S FACTUAL ALLEGATIONS

**Plaintiff Kristyn Thompson**

41.   Plaintiff Thompson purchased and used Defendant's Product during all relevant statutory periods.

42.   Before purchasing Defendant's Product, Plaintiff read and reviewed information about the Product, including the fact that the Product was being sold for personal use, not resale.

43.   When purchasing her Product, Plaintiff also reviewed the accompanying labels, disclosures, warranties, and marketing materials and understood them as representations, omissions, and warranties made by Defendant that the Product was a "Maximum Strength" hydrocortisone product. Plaintiff relied on these representations, omissions, and warranties to purchase Defendant's Product.

44.   Accordingly, these representations, omissions, and warranties were part of the basis of the bargain in that Plaintiff would not have purchased the

Product on the same terms had she known these representations were not true. As a result, Plaintiff was misled in purchasing the Product based on the "Maximum Strength" representations and omissions.

45.   However, Plaintiff has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

46.   In making her purchase, Plaintiff paid a substantial premium due to the false and misleading "Maximum Strength" representations and omissions.

47.   However, Plaintiff did not receive the benefit of her bargain because Defendant's Product is not a "Maximum Strength" hydrocortisone product and/or because Defendant omitted from the Product's labeling the fact that there are other prescription products available in the market that contain a higher percentage of hydrocortisone (i.e., 3%).

48.   Plaintiff also understood that her Product came with packaging and other materials prepared by Defendant, including representations and warranties regarding the Product being a "Maximum Strength" hydrocortisone product.

49.   Plaintiff also understood that in making the sale, her retailer acted with the knowledge and approval of Defendant and/or as the agent of Defendant.

50.   Plaintiff would not have purchased Defendant's Product if she had been aware that its "Maximum Strength" representations and omissions were untrue, or she would have paid less for the Product.

51.   Plaintiff paid a price premium for Defendant's Product compared to similar products.

### **FED. R. CIV. P. 9(b) ALLEGATIONS**

52.   Rule 9(b) of the Federal Rules of Civil Procedure provided that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

53.   **WHO**: Defendant Sanofi made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that they are "Maximum Strength" hydrocortisone products.

54.   **WHAT**: Defendant's conduct here was and continues to be fraudulent because it deceives consumers into believing that the Products are "Maximum Strength" hydrocortisone. Defendant omitted from Plaintiff and Class Members that the Products are not "Maximum Strength" hydrocortisone products because other hydrocortisone products exist in the market that contain a higher amount (i.e., up to 3%) of hydrocortisone. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" hydrocortisone products when they are not and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of hydrocortisone (i.e., up to 3%).

55.   **WHEN**: Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" hydrocortisone products, continuously throughout the applicable Class period(s).

56.   **WHERE**: Defendant's material misrepresentations and omissions that the Products are "Maximum Strength" hydrocortisone products were made on the front labeling and packaging of the Products and throughout Defendant's advertising. Defendant's representations are written with bold lettering with yellow highlights in the front and center of each product. This catches the eye of all reasonable consumers, including Plaintiff, at the point of sale in every transaction. The Products are sold in various brick-and-mortar stores and online retailers nationwide, including California.

57.   **HOW**: Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" hydrocortisone

products even though other stronger hydrocortisone products are available in the market. Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling that other prescription products that contain a higher percentage of hydrocortisone (i.e., up to 3%) are available in the market. And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

58.   **WHY**: Defendant misrepresented its Products as being "Maximum Strength" hydrocortisone products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of hydrocortisone (i.e., up to 3%) for the express purpose of inducing Plaintiff and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to hundreds of thousands of consumers nationwide.

## CLASS ACTION ALLEGATIONS

59.   Plaintiff brings this action on behalf of herself and the following Classes pursuant to Fed. R. Civ. P. 23(a), (b)(2), and/or (b)(3). Specifically, the Classes are defined as:

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family, or household purposes and not for resale.

> **California Subclass:** All persons residing in California who, during the maximum period of time permitted by law, purchased the Products primarily for personal, family, or household purposes and not for resale.

60.   Excluded from the Classes are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees

of any Defendant or any entity in which a Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for any Defendant, (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members, and (d) Class Counsel.

61.     Plaintiff reserves the right to amend the Class definition or Subclass definitions at a later date as necessary to conform with facts learned through discovery.

62.     As used herein, "Class Members" shall refer to the Nationwide Class members and all Subclasses, including Plaintiff.

63.     Plaintiff seeks only damages and equitable relief for themselves and the Class Members. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by herself and/or the Class Members.

64.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. On information and belief, members of the Class number in at least the hundreds of thousands. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and the Court.

65.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The representative Plaintiff's claims are typical in that Plaintiff, like all Class Members, purchased Defendant's Products that were marketed and distributed by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, she purchased Defendant's Products that did not contain Maximum strength Hydrocortisone as marketed and advertised. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent,

deliberate, and negligent misconduct resulting in injury to Plaintiff and all Class Members.

66. **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Numerous questions of law and fact common to Plaintiff and Class Members predominate over any individual questions. These common legal and factual issues include the following:

a. Whether Defendant's "Maximum Strength" representations and/or omissions regarding the Products are false and/or misleading;

b. Whether Defendant knowingly sold its Products which it knew did not contain "Maximum Strength" hydrocortisone;

c. Whether Defendant engaged in false and/or deceptive advertising;

d. Whether Plaintiff and the Class Members did not receive the benefit of their bargain when purchasing the Products;

e. Whether Defendant was unjustly enriched by consumers paying a price premium for a less than "Maximum Strength" hydrocortisone Product;

f. Whether Defendant's actions as described above violated the various state consumer protection laws as alleged herein;

g. Whether Plaintiff and Class Members have sustained monetary loss and the proper remedy for and measure of that loss;

h. Whether Defendant's conduct violated public policy; and

i. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

67. **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in prosecuting class actions, including consumer and product defect class actions, and intends to prosecute this action vigorously.

68.   **Superiority – Federal Rule of Civil Procedure 23(b)(3).** Plaintiff and Class Members have all suffered harm and damages due to Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' claims, few Class Members could likely afford to seek legal redress for Defendant's misconduct. Class Members will continue to incur damages absent a class action, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation. Class treatment will conserve the resources of the courts and the litigants and promote consistency and adjudication efficiency.

69.   In addition, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, equitable relief for the Class as a whole. In addition, Plaintiff intends to purchase the Products in the future if the Products are truthfully labeled and not misleadingly labeled.

## CAUSES OF ACTION

### COUNT I

### UNJUST ENRICHMENT

**(On Behalf of the Nationwide Class and the California Subclass)**

70.   Plaintiff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

71.   Plaintiff brings this count on behalf of herself, the Nationwide Class, and the California Subclass against Defendant.

72.   Plaintiff brings this count under California law.

73.   Plaintiff and Class Members conferred benefits on Defendant by

purchasing Defendant's Products at a premium price.

74.    Defendant knew such benefits.

75.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members purchasing its Products. Defendant's retention of these monies under these circumstances is unjust and inequitable because Defendant falsely and misleadingly labeled its Products as "Maximum Strength" hydrocortisone products when it knew or should have known that those representations were false or misleading.

76.    Defendant's "Maximum Strength" misrepresentations and omissions caused injuries to Plaintiff and Class Members because they would not have purchased (or paid a premium) for Defendant's Products had they known the true facts regarding the "Maximum Strength" claims and omissions made on the Products' labels and in Defendant's advertising.

77.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for unjust enrichment, as ordered by the Court.

## COUNT II

## <u>FRAUD</u>
### (On Behalf of the Nationwide Class and the California Subclass)

78.    Plaintiff brings this Count on behalf of herself, the Nationwide Class, and the California Subclass against Defendant, repeating and re-alleging all previous paragraphs as if fully included herein.

79.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

80. **WHO:** Defendant Sanofi made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that they are "Maximum Strength" hydrocortisone products.

81. **WHAT:** Defendant's conduct here was and continues to be fraudulent because it deceives consumers into believing that the Products are "Maximum Strength" hydrocortisone. Defendant omitted from Plaintiffs and Class Members that the Products are not "Maximum Strength" hydrocortisone products because other hydrocortisone products exist in the market that contain a higher amount (i.e., up to 3%) of hydrocortisone. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" hydrocortisone products when they are not and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of hydrocortisone (i.e., up to 3%).

82. **WHEN:** Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" hydrocortisone products, continuously throughout the applicable Class period(s).

83. **WHERE:** Defendant's material misrepresentations and omissions that the Products are "Maximum Strength" hydrocortisone products were made on the front labeling and packaging of the Products and throughout Defendant's advertising. On the front and center of the Products' labeling, Defendant's representations are written with bold lettering with yellow highlight immediately on top of the brand name on each of the Products, which catches the eye of all reasonable consumers, including Plaintiff, at the point of sale in every transaction. The Products are sold in various brick-and-mortar stores and online retailers nationwide, including California.

84. **HOW:** Defendant made written misrepresentations right on the front

label of the Products that the Products were "Maximum Strength" hydrocortisone products even though other stronger hydrocortisone products are available in the market. Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling that other prescription products that contain a higher percentage of hydrocortisone (i.e., up to 3%) are available in the market. And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

85. **WHY:** Defendant misrepresented its Products as being "Maximum Strength" hydrocortisone products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of hydrocortisone (i.e., up to 3%) for the express purpose of inducing Plaintiff and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to hundreds of thousands of consumers nationwide.

86. As alleged herein, Defendant made these material "Maximum Strength" representations and omissions to induce Plaintiff and Class Members to purchase the Products.

87. As alleged in detail herein, Defendant knew the misrepresentations and omissions regarding the Products were false and misleading but made such representations and omissions through the marketing, advertising, and the Products' labeling. In reliance on these representations and omissions, Plaintiff and Class Members were induced to, and did, pay monies to purchase the Products.

88. Had Plaintiff and the Class known the truth about the Products, they would not have purchased them.

89. As a proximate result of Defendant's fraudulent conduct, Plaintiff

and Class Members paid monies to Defendant through its regular retail sales channels, to which Defendant is not entitled and have been damaged in an amount to be proven at trial.

## COUNT III

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code § 17500 ("FAL")
### (On Behalf of the California Subclass)

90.   Plaintiff brings this Count on behalf of herself and the California Subclass against Defendant, repeating and re-alleging all previous paragraphs as if fully included herein.

91.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

92.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Id.

93.   As alleged herein, Defendant's advertisements, labeling, policies, acts, and practices relating to its "Maximum Strength" representations and omissions on the Products' labeling and advertising misled consumers acting reasonably.

94.   Plaintiff Kristyn Thompson and California Subclass Members suffered injuries due to Defendant's actions as set forth herein because they purchased Defendant's Products in reliance of Defendant's false and misleading "Maximum Strength" hydrocortisone labeling claims as alleged herein.

95.   Defendant's business practices, as alleged herein, constitute deceptive, false, and misleading advertising under the FAL because Defendant has advertised the Products in an untrue and misleading manner, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

96.   Defendant profited from selling the falsely and deceptively advertised Products to unwary consumers.

97.   As a result, Plaintiff and the California Subclass are entitled to equitable relief, restitution, and an order to disgorge the funds by which Defendant was unjustly enriched.

98.   Plaintiff and the California Subclass were damaged because they would not have purchased (or paid a premium for) Defendant's Products had they known the true facts regarding the "Maximum Strength" hydrocortisone representations contained on the front label of the Products.

## COUNT IV

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of the California Subclass)

99.   Plaintiff brings this Count on behalf of herself and the California Subclass against Defendant, repeating and re-alleging all previous paragraphs as if fully included herein.

100. Defendant is subject to the Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, et seq. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

101. Defendant violated the "unlawful" prong of the UCL by violating California's False Advertising Law ("FAL") as described in Count III above.

102. Defendant's conduct, described herein, violated the "unfair" prong

of the UCL because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

103. Defendant's conduct concerning the labeling, advertising, and sale of the Products was unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including but not limited to the applicable sections of the FAL.

104. Defendant's conduct concerning the labeling, advertising, and sale of the Products was unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

105. Defendant's conduct, described herein, also violated the "fraudulent" prong of the UCL.

106. A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set forth herein, Defendant's claims relating strength of the hydrocortisone on the Products' labeling were false. And the continued production of the Products, despite making the false "Maximum Strength" representations that are likely to mislead or deceive the public, is fraudulent under the UCL.

107. Moreover, Defendant omitted from the Products' labeling that other prescription products in the market contain a higher percentage of hydrocortisone (i.e., up to 3%); therefore, this conduct was false, misleading, and "fraudulent" under the UCL.

108. Defendant profited from selling the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers, including Plaintiff and Class Members.

109. Defendant's conduct caused substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered an injury-in-fact as a result of

Defendant's unlawful conduct. Plaintiff and California Subclass Members were damaged because they would not have purchased (or paid a premium for) Defendant's Products had they known the true facts regarding Defendant's "Maximum Strength" representations and omissions.

110. Under Bus. & Prof. Code § 17203, Plaintiff seeks an order requiring Defendant to commence a corrective advertising campaign.

111. Plaintiff and the California Subclass also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

**COUNT V**

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of the California Subclass)**

112. Plaintiff brings this Count on behalf of herself and the California Subclass against Defendant, repeating and re-alleging all previous paragraphs as if fully included herein.

113. The CLRA prohibits deceptive practices concerning a business that provides goods, property, or services primarily for personal, family, or household purposes.

114. Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members and violated and continues to violate the following sections of the CLRA:

    a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits that they do not have;

    b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

e.   Defendant profited from selling the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

f.   Defendant's unlawful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

115.  Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff Kristyn Thompson provided a letter to Defendant on June 22, 2023, concurrent with the filing of this Class Action Complaint, with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

116.  Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, her reasonable attorney's fees and costs, and any other relief that the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class Members;

b. For an order declaring that Defendant's conduct violated the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

d. For statutory and compensatory damages in amounts to be determined by the Court and/or jury, except no monetary damages under the CLRA;

e. For prejudgment interest on all amounts awarded;

f. For injunctive relief as pleaded or as the Court may deem proper;

g. For an order of restitution and all other forms of equitable monetary relief, except no monetary damages under the CLRA;

h. For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit;

i. Damages in an amount to be determined at trial; and

j. For such other and further relief as the Court may deem proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 22, 2023                Respectfully submitted,

*/s/ Erika Heath*
Erika Angelos Heath
**FRANCIS MAILMAN SOUMILAS, P.C.**
369 Pine Street, Suite 410
San Francisco, CA 94104
Telephone: (628) 246-1352
Facsimile: (215) 940-8000
eheath@consumerlawfirm.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10518

San Juan, PR 00907
Tel: (215) 789-4462
klaukaitis@laukaitislaw.com
*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the
Putative Classes*

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

Pursuant to 28 U.S.C. § 1746, I, Erika Angelos Heath, declare as follows:

1.      I am an attorney licensed to practice law in California. I am an attorney at the law firm of Francis Mailman Soumilas, P.C., one of the counsel of record for Plaintiff Kristyn Thompson in the above-captioned action.

2.      I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would competently testify thereto under oath.

3.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct that this declaration was executed at San Francisco, California, this 22nd day of June 2023.

By:  /s/ Erika Heath
Erika Angelos Heath